UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Raquel Munoz,

Plaintiff,

v.

ABC INOAC Exterior Systems, LLC,

Defendant.

Case No. 3:23-cv-456

MEMORANDUM OPINION AND ORDER

## I. INTRODUCTION

Plaintiff Raquel Munoz brought this action after Defendant ABC INOAC Exterior Systems, LLC terminated her employment. (Doc No. 1). Plaintiff alleges Defendant acted in a discriminatory and retaliatory manner in violation of the Family and Medical Leave Act ("FMLA"), the Age Discrimination in Employment Act of 1967 ("ADEA), Title VII of the Civil Rights act of 1964, and Ohio law. (*Id.* at 4-13). Defendant moved for summary judgment on all claims. (Doc. No. 16). Plaintiff filed a memorandum in opposition, (Doc. No. 23), and Defendant filed a reply. (Doc. No. 24). For the reasons stated below, I grant Defendant's motion.

## II. BACKGROUND

Defendant owns and operates an automotive-parts manufacturing plant in Fremont, Ohio. (Doc. No. 16-2 at 1). Plaintiff worked for Defendant, initially as a general employee in the quality department and, later, as a "Junior Quality Engineer." (Doc. No. 21 at 7). Defendant created the Junior Quality Engineer position specifically for Plaintiff after she obtained her associate's degree in

manufacturing. (*Id.* at 4, 7); (Doc No. 16-2 at 1). Plaintiff was the only Junior Quality Engineer Defendant employed. (Doc. No. 21 at 7).

During her employment, Defendant provided Plaintiff with an employee handbook. (*Id.* at 6). The handbook includes provisions concerning the FMLA. (Doc. No. 21-1 at 36-39). In pertinent part, the handbook stated:

> When the need for Family and Medical Leave is not foreseeable, the employee must notify [Defendant] as soon as possible of the need for leave by completing the FMLA Request form immediately at the time leave is requested. Medical certification must be provided within 15 days. If the completed medical certification form is not returned within 15 days from the start of the leave, the leave may be canceled and the employee may be required to return to work immediately. Unauthorized absences from work may result in termination of employment.

(*Id.* at 37).

The handbook also contained provisions concerning Defendant's equal opportunity, affirmative action, open door, bereavement, and attendance policies. (*Id.* at 9-10, 32-33). The equal opportunity and affirmative action provision stated:

> All personnel actions including those relating to compensation, benefits, transfers, layoffs, [Defendant]-sponsored training, and tuition assistance programs are to be administered without regard to race, color, religion, sex, age, national origin, sexual orientation, disability, or status as a disabled veteran or a veteran of the Vietnam era, except where any of such characteristics is a bone fide occupational qualification, or where a qualified person with a disability cannot be reasonably accommodated without creating an undue hardship on [Defendant's] business.

(*Id.* at 9).

Defendant's open door policy informed employees that they had the right to speak with someone other than their supervisor and explained that Defendant maintained that policy so that employees might "feel free to discuss any issue of concern with the Manufacturing Manager, the Human Resources Manager[,] or the Plant Manager." (*Id.* at 10).

Under Defendant's bereavement policy, employees who experienced the loss of a parent were granted up to four days of paid leave. (*Id.* at 32).

Lastly, Defendant's attendance policy provided that unexcused absences could result in the end of "the employment relationship." (*Id.* at 50). The policy expressly stated that "[a]pproved FMLA" leave would not affect the employee's attendance record. (*Id.*). Plaintiff signed a form acknowledging that she had received and reviewed the handbook, was familiar with its contents, understood the policies and procedures contained in the handbook, and understood that it was her responsibility to comply with those policies and procedures. (Doc. No. 21-2).

During her employment with Defendant, Plaintiff requested and received FMLA leave on multiple occasions. (Doc. No. 21 at 8-9). Before the leave request at issue here, Defendant had outsourced administration of the FMLA leave-request and approval process to a third-party administrator – Mutual of Omaha. (Doc. No. 19 at 12); (Doc No. 21 at 10). Under the Mutual of Omaha process, employees were responsible for initiating their own FMLA requests. (Doc. No. 19 at 13).

At the beginning of 2022, Plaintiff informed department manager Jamie Chester and HR Generalist Dorothy Camarata that she would need time off to travel to Las Vegas to care for her ailing father. (Doc. No. 21 at 7-9). Chester stated, "family comes first," and encouraged Plaintiff to take time off to tend to her father. (*Id.* at 10). Camarata directed Plaintiff to the Mutual of Omaha website and provided her with instructions and paperwork explaining how to apply for FMLA leave through the portal. (*Id.* at 13); (Doc. No. 19 at 11).

Plaintiff used the Mutual of Omaha site to request leave beginning January 18, 2022, and ending February 18, 2022. (Doc. No. 21 at 10); (Doc. No. 21-10). But on January 18, Plaintiff's father passed away. (Doc. No. 21 at 10). Camarata informed Plaintiff, that if she still wished to seek FMLA leave, she would need to modify her request to seek leave based on her own medical condition. (*Id.* at 10); (Doc. No. 19 at 14-15).

On January 31, 2022, Plaintiff contacted Camarata and her supervisor, Kristy Decker, and informed them that she had requested FMLA leave for her own medical condition and had submitted the required paperwork to her physician for completion. (Doc. No. 21 at 11); (Doc No. 21-11 at 1). Plaintiff stated that she was requesting leave "[d]ue to loss of my Father, under stress and depress." (Doc. No. 21-11 at 2). Plaintiff requested leave from January 18, 2022, through February 21, 2022. (*Id.*).

On February 4, 2022, Mutual of Omaha informed Plaintiff that it had received her leave request and that her medical certification was due by February 22, 2022. (Doc. No. 21 at 12); (Doc No. 21-12 at 1). The notice stated, in pertinent part:

> **Submit a complete, sufficient medical certification.**
> In order for your leave to be designated under FMLA, you must have the attached certification completed and returned to AbsencePro by the due date (see "Certification due" section) listed above. Please be advised that although you are reliant upon your health care provider to complete the certification, it is ultimately your responsibility to ensure that we receive a completed and sufficient certification. If you are having difficulty getting such certification, contact AbsencePro. If a complete and sufficient certification is not submitted within this 15 day period, the commencement of your leave may be delayed or your leave may be denied.

(Doc. No. 21-12 at 1-2). The notice also provided a telephone number and email address Plaintiff could use should she have questions or need assistance obtaining or submitting certification. (*Id.* at 2).

Between January 17, 2022, and February 25, 2022, Plaintiff traveled extensively. (Doc. No. 21 at 28-29); (Doc. No. 21-24 at 1-12). On January 17, she flew from Detroit to Las Vegas. (Doc. No. 21 at 28-29); (Doc. No. 21-24 at 1). On February 3, Plaintiff drove from Las Vegas to El Paso, Texas, to attend her father's funeral. (Doc. No. 21 at 29); (Doc. No. 21-24 at 2). On February 6, she returned to Las Vegas by car. (Doc. No. 21 at 29); (Doc. No. 21-24 at 4). Between February 9 and February 12, Plaintiff drove from Las Vegas to California to visit her sister and obtain assistance

with matters related to her father's funeral. (Doc. No. 21 at 29-30). She remained in California until she returned to Ohio on February 25, 2022. (*Id.* at 28); (Doc. No. 21-24 at 12).

During this period, Defendant attempted to contact Plaintiff using the telephone number she had provided. (Doc. No. 19 at 19); (Doc. No. 21 at 19). Those attempts were unsuccessful because the number Plaintiff provided was her home telephone number and she was away from home. (Doc. No. 21 at 12, 19). On February 22, 2022 – the deadline for Plaintiff to submit her medical certification – HR Generalist Sarah Wolf made a final attempt to contact Plaintiff through Facebook to determine when Plaintiff intended to return to work. (Doc. No. 21 at 14). Wolf asked Plaintiff to contact her as soon as possible. (*Id.*) (Doc. No. 21-14). Later that afternoon, Plaintiff contacted Wolf and stated that she did not have a return-to-work date because she was in California and had not yet purchased a plane ticket home. (Doc. No. 21 at 14). Plaintiff stated that she still had to "take care of some stuff" related to settling her father's estate. (*Id.*).

At 4:03 p.m. that same day, Plaintiff emailed Camarata and explained that she was attempting to extend her leave request but was unable to do so through the Mutual of Omaha portal. (*Id.* at 15). Although Plaintiff had attempted to access it the week before, she did not contact Mutual of Omaha for assistance with the portal. (*Id.* at 15). Nor did Plaintiff request an extension of the certification deadline or request extended leave with Mutual of Omaha or Defendant before February 22. (*Id.* at 15-16). Plaintiff did not submit certification by the February 22, 2022 deadline, so Mutual of Omaha denied her FMLA request. (Doc. No. 21-16). In total, Plaintiff did not report for work January 18, 2022 through February 25, 2022. (Doc. No. 16-2 at 1).

On February 25, 2022, Defendant terminated Plaintiff's employment. (*Id.*); (Doc. No. 21 at 6). Defendant states it terminated Plaintiff due to her unexcused absences. (Doc. No. 16-2 at 1). Plaintiff asserts she was terminated because "the Company was not aware of my absence, did not know when I was planning to return, that my FMLA paperwork was never returned and that the

company did not know how to get in touch with me while I was out of the office." (Doc. No. 21 at 19); (Doc. No. 21-17 at 1-2). Plaintiff was 59 years old at the time of termination. (Doc. No. 21 at 32). Following Plaintiff's termination, Defendant outsourced a portion of her duties and redistributed the remaining duties among other existing employees. (Doc. No. 16-2 at 1).

Two days later, Plaintiff appealed her termination. (Doc. No. 21-17). In her appeal letter, Plaintiff asserted that Jamie Chester knew she needed time off to care for her father and that she would likely request FMLA leave. (*Id.* at 1). Plaintiff also asserted that Defendant had means of contacting her during her absence other than the contact information she had entered into Defendant's HR database. (*Id.* at 2). Plaintiff did not allege in her appeal letter that she was terminated because of her age, race, or nationality.

Plaintiff further asserted that she applied for FMLA leave at Camarata's urging but never received confirmation that the request had been received, that forms had been sent to her physician, or "the next step in the process advising of the required time frames for the completion of the process, despite my marking in the system that I would like to be contacted via email and text." (*Id.*). Plaintiff acknowledged during her deposition, however, that Mutual of Omaha mailed communications containing pertinent information to her home while she was away, and that her husband remained at the residence during that period. (Doc. No. 21 at 10, 12). Plaintiff also acknowledged that pertinent information was available through the Mutual of Omaha portal, which she could access. (*Id.* at 13). But she testified that logging into the portal "wasn't priority to me when I'm trying to take care of my father's funeral." (*Id.* at 17).

On March 8, 2022, Plaintiff saw her physician, Dr. Haynes, seeking treatment for grief and adjustment insomnia. (*Id.* at 23). On March 9, 2022, Dr. Haynes submitted Mutual of Omaha's medical certification form. (*Id.* at 21); (Doc No. 21-18 at 6-7). In the section of the certification form titled "Patient's Condition: Describe Appropriate Medical Facts," Doctor Haynes stated that

Plaintiff was unable to perform the functions of her job because her "father passed away" and Plaintiff "had to go out of state to take care of the estate and for funerals." (Doc. No. 21-18 at 6). Dr. Haynes also indicated on the certification form that Plaintiff did not have a serious health condition. (*Id.*). Even so, Dr. Haynes noted that Plaintiff was incapacitated from January 18 through February 25, 2022. (*Id.* at 7).

A few days later, Mutal of Omaha notified Plaintiff that the certification was incomplete and asked Dr. Haynes to complete a questionnaire providing more information concering Plaintiff's serious medical condition. (Doc. No. 21-19 at 2). In response, Dr. Haynes indicated that Plaintiff had been "incapacitated for more than 3 consecutive, full calendar days" and would receive follow-up care. (*Id.*). The record does not contain evidence that Dr. Haynes explained the apparent inconsistencies between the initial certification and subsequent questionnaire. Following receipt of the additional information, Mutual of Omaha approved Plaintiff's FMLA leave request. (Doc. No. 21-20 at 1). Plaintiff testified that she did not thereafter receive follow-up care from a medical professional, instead seeking counseling from a member of her church congregation. (Doc. No. 21 at 23-24).

Plaintiff brings claims under the FMLA, alleging Defendant interfered with her FMLA rights and retaliated against her for exercising those rights. (Doc. No. 1 at 4-6). Plaintiff also alleges that Defendant terminated her because of her age, race, and national origin in violation of federal and Ohio law. (*Id.* at 6-13). Defendant argues that the record shows there are no genuine disputes of material fact as to any of Plaintiff's claims and that it is entitled to judgment as a matter of law. (Doc. No. 16 at 1).

## III. STANDARD

Summary judgment is appropriate if the movant demonstrates there are no genuine dispute of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

All evidence must be viewed in the light most favorable to the nonmovant and all reasonable inferences are drawn in the nonmovant's favor. *See, e.g.*, *Ondo v. City of Cleveland*, 795 F.3d 597, 603 (6th Cir. 2015) (citing cases). A factual dispute is genuine if a reasonable jury could resolve the dispute and return a verdict in the non-movant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A disputed fact is material only if its resolution might affect the outcome of the case under the governing substantive law. *Rogers v. O'Donnell*, 737 F.3d 1026, 1030 (6th Cir. 2013).

## IV. ANALYSIS

### A. FAMILY AND MEDICAL LEAVE ACT

Plaintiff alleges that between January 18 and February 25, 2022, she suffered from serious health conditions arising from "the stress of her father[']s passing." (Doc. No. 1 at 5). She asserts that these health conditions entitled her to FMLA leave. (*Id.*). Plaintiff also alleges that she completed all FMLA paperwork provided to her and was not informed that medical certification was required until her leave request was denied. (*Id.*). According to Plaintiff, Defendant interfered with her exercise of FMLA rights and retaliated against her for exercising those rights. (*Id.*). She therefore asserts claims under 29 U.S.C. §§ 2615 and 2617.

Defendant argues that Plaintiff's absences were not protected by the FMLA because she failed to submit the required medical certification by the specified deadline. (Doc. No. 16-1 at 13). Defendant further asserts that Plaintiff did not have a serious condition under the FMLA. (*Id.*). Thus, Defendant argues Plaintiff's absences were unexcused and provided grounds for her termination. (Doc. No. 16-1 at 15, 20).

Under the FMLA, an eligible employee is entitled to 12 work weeks of unpaid, job-protected leave during a twelve-month period when a serious health condition makes the employee unable to perform the functions of her position or the employee needs to care for a qualifying family member. 29 U.S.C. § 2612(a)(1)(C)-(D). The FMLA makes it unlawful for an employer "to interfere with,

restrain, or deny the exercise of or the attempt to exercise, any right provided [in the Act]." § 2615(a)(1). The FMLA also prohibits an employer from retaliating against an employee for exercising rights protected by the Act. *See Seeger v. Cincinnati Bell Tel. Co., LLC*, 681 F.3d 274, 282 (6th Cir. 2012). Thus, plaintiffs may pursue claims under two distinct theories under the FMLA – interference and retaliation. *See Dyer v. Ventra Sandusky, LLC*, 934 F.3d 472, 475 (6th Cir. 2019). Plaintiff advances both theories.

**1. Interference**

To establish a prima facie case of FMLA interference, Plaintiff must show that: (1) she was an eligible employee; (2) Defendant was an employer as defined in the FMLA; (3) she was entitled to leave under the FMLA; (4) she gave Defendant notice of her intention to take leave; and (5) Defendant denied her FMLA benefits she was entitled to. *Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 507 (6th Cir. 2006). Although an employer's motive generally is not relevant to an interference claim, an employer does not violate the FMLA if it takes employment action for a reason unrelated to the employee's exercise of FMLA rights. *Id.* at 507-08.

When an employee requests FMLA leave, an employer may require the employee to support the request with medical certification issued by a health care provider. 29 U.S.C. § 2613(a). The employee must provide the certification "in a timely manner." *Id.* A sufficient certification must contain, among other information, the date on which the condition began, its probable duration, and appropriate facts concerning the condition. 29 U.S.C. § 2613(b)(1)-(3). When applicable, the certification must also include information concerning the planned medical treatment and the dates on which such treatment is expected to occur. 29 U.S.C. § 2613(b)(5). When the need for leave is unforeseeable, the FMLA provides that:

> an employer may deny FMLA coverage for the requested leave if the employee fails to provide a certification within 15 calendar days from receipt of the request for certification unless not practicable due to extenuating circumstances. For example, in the case of a medical emergency, it may not be practicable for an employee to provide

> the required certification within 15 calendar days. Absent such extenuating circumstances, if the employee fails to timely return the certification, the employer can deny FMLA protections for the leave following the expiration of the 15-day time period until a sufficient certification is provided. If the employee never produces the certification, the leave is not FMLA leave.

29 C.F.R. § 825.313(b). It is the employee's responsibility to provide "a complete and sufficient certification" or to provide the health care provider with any necessary authorization to permit the provider to submit a complete and sufficient certification directly to the employer. 29 C.F.R. § 825.305(d).

While it is the employee's obligation to provide certification, an employer has corresponding obligations. When an employer requires medical certification, it must notify the employee of that requirement "each time certification is required." 29 C.F.R. § 825.305(a). The employer "must also advise an employee of the anticipated consequences of an employee's failure to provide adequate certification." 29 U.S.C. § 825.305(d). If an employee submits a certification that is incomplete or insufficient, the employer must provide the employee with "seven calendar days (unless not practicable under the particular circumstance despite the employee's diligent good faith efforts) to cure any such deficiency." 29 U.S.C. § 825.305(c). If the employee fails to cure the deficiencies within the applicable period, or provide any certification at all, the employer may deny the FMLA leave. 29 U.S.C. § 825.305(d).

Plaintiff argues that Defendant failed to satisfy its notification obligations under § 825.305(d). Specifically, Plaintiff asserts that she did not learn that medical certification was required until her request for FMLA leave was denied. (Doc. No. 1 at 4). Plaintiff further argues that Defendant failed to inform her that failure to timely provide certification could result in termination. (Doc. No. 23 at 9).

Even viewing the evidence in the light most favorable to Plaintiff, no reasonable jury could conclude that Defendant failed to provide the notice required by the FMLA.

Plaintiff relies on two cases in support of her argument that Defendant failed to provide proper notice: *Barker v. Genesys PHO, LLC*, 46 F. Supp. 3d 717 (E.D. Mich. 2014) and *Branham v. Gannett Satellite Info. Network, Inc.*, 619 F.3d 563 (6th Cir. 2010). (Doc. No. 23 at 8-10).

In *Barker*, it was critical to the court's analysis that the employer failed to identify a specific date by which the plaintiff had to submit certification. *Barker*, 46 F. Supp. 3d at 728-32. That court emphasized that the employer failed to provide a written request for certification or adequately explain in writing the consequences of failing to timely provide certification. *Id.* at 731-32.

In *Branham*, the employer provided only oral notice of its medical certification requirement and omitted that requirement from its employee handbook. *Branham*, 619 F.3d at 573. The Sixth Circuit concluded that the employer could not penalize the employee's failure to provide timely certification because it had failed to give proper notice of the requirement, set a deadline that complied with the FMLA, or inform the employee of the consequences of failing to provide certification. *Id.*

The facts in this case are distinguishable. The record shows that Mutual of Omaha provided Plaintiff with written notice describing what was required of her leave to qualify for FMLA protection.[1] (Doc. No. 21-12 at 1-2). The notice made it clear that Plaintiff had to submit a complete and sufficient medical certification by February 22, 2022, and that it was ultimately her responsibility to ensure that the certification was received. (*Id.*). The notice also provided a

[1] Defendant points to Plaintiff's prior FMLA requests and submission of medical certification as additional evidence that Plaintiff understood the certification requirement and process. (Doc. No. 16 at 15). The record indicates that Plaintiff timely submitted medical certification on multiple occasions. (Doc No. 21-4 at 2-3); (Doc No. 21-5 at 2-4); (Doc. No. 21-6 at 2-4); (Doc No. 21-7 at 2); (Doc. No. 21-8 at 2); (Doc. No. 21-9 at 4-7). Plaintiff's previous experience with the certification process, however, did not relieve Defendant of its obligation to provide the required notice for the leave request at issue here. *See* 29 C.F.R. 825.305(a) (requiring an employer to provide notice "each time a certification is required").

telephone number and email address through which Plaintiff could contact Mutual of Omaha should she have questions or had trouble obtaining the required certification. (*Id.* at 2). A copy of this notice was mailed to Plaintiff's home address, where her husband remained while she was traveling. (*Id.* at 1); (Doc. No. 21 at 10, 12). The notice was also available on the Mutual of Omaha portal. (Doc. No. 21 at 12-13). Although Plaintiff states that she had trouble accessing the portal, she acknowledges that she did not contact Mutual of Omaha for assistance. (*Id.* at 15). Plaintiff also concedes that she did not request an extension of the certification deadline from Mutual of Omaha before the February 22 deadline. (*Id.* at 15-16).

Moreover, the notice expressly advised Plaintiff of the consequences of failing to meet the certification deadline: if she did not timely submit a complete and sufficient certification, her FMLA leave could be delayed or denied. (Doc. No. 21-12 at 2). Defendant's employee handbook – which Plaintiff acknowledged receiving and reviewing – explicitly warns that unauthorized absences could result in termination of employment. (Doc. No. 21-1 at 37, 50); (Doc. No. 21-2).

Plaintiff's own communications further demonstrate that she was aware of the certification requirement. On January 31, 2022, Plaintiff provided Defendant with a "copy of the paper work that is required for FMLA" and noted that she had "call[ed] my doctor to fill my paper work." (Doc. No. 21-11 at 1). On this record, no reasonable jury could conclude that Defendant failed to provide Plaintiff with the notice required by the FMLA.

When an employer properly requests medical certification, the employee must provide the certification "in a timely manner." 29 U.S.C. § 2613(a). Failure to timely submit certification in such circumstances, "will generally preclude an employee's FMLA-interference claim." *Kinds v. Ohio Bell Tel. Co.*, 724 F.3d 638, 652 (6th Cir. 2023) (further citation omitted); *see also id.* at 654 (affirming summary judgment on FMLA interference claim where employee failed to meet medical certification deadline); *Poling v. Core Molding Tech.*, No. 2:10-CV-963, at *5 (S.D. Ohio Feb. 9, 2012) ("Plaintiff did

not comply with Core's valid request for a medical certification of the September 21, 2008, absence. Core was therefore entitled to treat Plaintiff's absence as non-FMLA leave, which carried with it in this case the consequence of termination."); *Swinehart v. Jacobson Mfg., Inc.*, No. 1:09 CV 51, 2009 WL 4730591, at *3-4 (N.D. Ohio Dec. 7, 2009) (granting summary judgment where plaintiff failed to submit certificate by deadline); *Willis v. Legal Aid Def. Ass'n, Inc.*, No. 11-11384, 2012 WL 246293, at *10 (E.D. Mich. Jan. 26, 2012) (rejecting plaintiff's argument that it is unlawful to terminate an employee for absences deemed unexcused after plaintiff failed to timely submit medical certification). *But see Killian v. Yorozu Auto. Tenn., Inc.*, 454 F.3d 549, 554 (6th Cir. 2006) (noting in dicta that the proper remedy for failure to meet certification deadline is delay of FLMA leave, not termination). The Sixth Circuit has affirmed a district court's entry of summary judgment against a plaintiff where the plaintiff missed the certification deadline by one day. *See Frazier v. Honda of America Mfg., Inc.*, 431 F.3d 563, 565, 567 (6th Cir. 2005).

Here, it is undisputed that Plaintiff did not submit medical certification by the February 22, 2022 deadline. But an employee's late certification may be excused if meeting the deadline is impracticable despite the employee's diligent, good faith efforts. *See* 29 C.F.R. § 825.305(b). Plaintiff argues that timely submission of her medical certification was not practicable because she was traveling and away from home while attending to matters related to her father's estate. (Doc. No. 23 at 10). Plaintiff further states that difficulties with the Mutual of Omaha portal made timely submission impracticable, despite her good-faith efforts to comply. (*Id.*). *See also* C.F.R. § 825.305(b).

Defendant responds that the exception does not apply because Plaintiff was given more than the 15 days required by § 825.305(b). (Doc. No. 24 at 3). Defendant notes that Mutual of Omaha notified Plaintiff of the certification requirement on February 4 and set a certification deadline of February 22, giving Plaintiff 18 days to submit the certification. (*Id.*). Defendant further argues that

Plaintiff failed to establish that she made diligent, good faith efforts to timely submit certification. (*Id.*).

I am not persuaded that providing more than the regulatory minimum, standing alone, eliminates § 825.305(b)'s exception, as that provision expressly contemplates the possibility that an employer may provide an employee with more than 15 calendar days to return a certification. The question remains whether the evidence, viewed in Plaintiff's favor, would permit a reasonable jury to find that timely certification was not practicable under the circumstances despite Plaintiff's diligent, good-faith efforts.

Courts considering this exception generally focus on whether circumstances outside the employee's control prevented the employee from meeting the deadline. *See, e.g., Chenoweth v. Wal-Mart Stores, Inc.*, 159 F. Supp. 2d 1032, 1038-39 (S.D. Ohio 2001) (finding genuine dispute of material fact where the employer provided certification paperwork only six days before employee's termination and physician was unable to complete the paperwork in that timeframe); *Uema v. Nippon Exp. Hawaii, Inc.*, 26 F. Supp. 2d 1241, 1248 (D. Hawaii 1998) (concluding that a reasonable jury could find timely certification impracticable where the employee's physician was on leave for two weeks, preventing plaintiff from obtaining certification from the physician); *Toro v. Mastex Indus., Inc.*, 32 F. Supp. 2d 25, 29 (D. Mass. 1999) (finding a genuine issue of material fact concerning impracticality where the employee traveled to Columbia for his wife's mastectomy and arranged for a family member to provide the completed forms to the employer); *Peter v. Lincoln Tech. Inst., Inc.*, 255 F. Supp. 2d 417, 442 (E.D. Penn. 2002) (finding that a reasonable jury could find impracticability where employee hand-delivered certification forms to his physician and called approximately three times a week to ensure their completion, each time receiving assurance from physician that forms would be mailed "by the end of the week").

The circumstances here are materially different from those in which courts have found a genuine dispute concerning whether timely certification was impracticable. Plaintiff testified that she left a message for her physician concerning completion of the certification paperwork. (Doc. No. 21 at 10). When she learned that her physician's office had not received the paperwork, she accessed the Mutual of Omaha portal and resubmitted the request. (*Id.*). Plaintiff also testified that, while traveling, she left voicemails for her physician but did not receive a response. (*Id.* at 18).

Those efforts, viewed in the light most favorable to Plaintiff, show that she took some steps to obtain the required certification. But the record does not contain evidence showing that circumstances outside Plaintiff's control prevented her from timely complying despite diligent, good-faith efforts. Unlike the employees in the cases discussed above, there is no evidence that Plaintiff's physician was unavailable or unable to complete certification by the deadline. Further, there is nothing in the record that shows Plaintiff repeatedly followed up with her physician as the deadline approached or otherwise attempted to determine whether the certification had been completed and submitted. Moreover, Plaintiff did not inform Defendant that she would not meet the certification deadline. *See Peter*, 255 F. Supp. 2d at 441 (noting that good faith requires, at minimum, the employee to inform his employer that he cannot meet the certification deadline) (citation omitted).

Plaintiff also did not contact Mutual of Omaha for assistance before the February 22 deadline, despite having been provided with a telephone number and email address for that purpose. (Doc. No. 21 at 15-16); (Doc. No. 21-12 at 2). Although Plaintiff testified she had experienced difficulty with the Mutual of Omaha portal, she attempted to access the portal a week before the certification deadline, but she did not contact Mutual of Omaha for technical assistance. (Doc. No. 21 at 15-16); (Doc. No. 21-12 at 2). And Plaintiff did not ask Defendant or Mutual of Omaha for

additional time – in addition to the three extra days Defendant already provided – to obtain the certification before the deadline had expired. (*Id.*).

Plaintiff argues that her extensive travel following her father's death also made timely certification impracticable. (Doc. No. 23 at 10). The circumstances surrounding her father's death understandably required Plaintiff to travel to attend her father's funeral. But Plaintiff has not identified evidence that her travel prevented her from communicating with her physician, Mutual of Omaha, or Defendant concering certification requirements. Indeed, the record shows that Plaintiff accessed the Mutual of Omaha portal while traveling, spoke with her physician's office, and communicated electronically with Defendant and her coworkers during this period. (Doc. No. 19 at 15); (Doc. No. 21 at 14); (Doc. No. 21-11 at 1); (Doc. No. 21-17 at 2).

Plaintiff ultimately did not provide her physician with medical certification paperwork until after the deadline had expired. (Doc. No. 21 at 23). And her physician did not submit the medical certification until March 9, 2022, more than two weeks after the February 22 deadline. (Doc. No. 21-18 at 6).

Considering the record as a whole, and drawing all reasonable inferences in Plaintiff's favor, no reasonable jury could find that Plaintiff's failure to timely submit medical certification resulted from circumstances that made compliance impracticable despite her diligent, good-faith efforts. Thus, Plaintiff has not established a genuine dispute of material fact as to impracticality. *See Brookins v. Staples Cont. & Com., Inc.*, No. 11-11067-RWZ, 2013 WL 500874, at *3 (D. Mass. Feb. 12, 2013) (finding no genuine dispute on impracticability where plaintiff was denied certification by two doctors, but did not seek certification further or ask employer for extension); *see also Young v. Russell Corp.*, No. 2:08CV148, 2008 WL 5412783, at *3 (M.D. Ala. Dec. 29, 2008) (no dispute of material fact where an employee was granted extensions and first pursued certification after the 15-day deadline has passed).

Defendant separately argues that Plaintiff was not entitled to FMLA leave because she did not suffer from a "serious medical condition" under the Act. (Doc. No. 16-1 at 17-19). Because Plaintiff's failure to timely provide the required medical certification is independently dispositive of her interference claim, I need not and do not express an opinion on that issue. *See Kinds*, 724 F.3d at 654 ("[T]he failure to provide a medical certification is an independent basis for denying FMLA leave notwithstanding the appropriateness of that leave.").[2]

**2. Retaliation**

Plaintiff further alleges that Defendant terminated her in retaliation for seeking FMLA leave. Defendant argues Plaintiff cannot establish an FMLA retaliation claim because she was not ultimately entitled to FMLA leave. (Doc. No. 16-1 at 19). *See Milman v. Fieger & Fieger, P.C.,* 58 F.4th 860, 868 (6th Cir. 2023) (noting that where an employee "takes leave without being entitled to the leave, her action is beyond the scope of FMLA protection").[3]

Defendant also argues that it had a non-discriminatory reason for terminating Plaintiff – her absenteeism and unexcused absences. (Doc. No. 16-1 at 20).

To establish a prima facie case of FMLA retaliation, Plaintiff must show: (1) she was engaged in an FMLA protected activity; (2) Defendant "'knew she was exercising her FMLA rights'"; (3) Defendant "'took an employment action adverse to her'"; and (4) "there was a causal

---

[2] Plaintiff relies on her certification submitted on March 9, 2022, and her curing of its deficiencies within seven days, to support the argument that she was entitled to FMLA leave. (Doc. No. 23 at 9-10). But, by the time she provided certification, the initial deadline had passed. At no time did Plaintiff request an extension of that deadline. Although Mutual of Omaha eventually approved her FMLA leave, Plaintiff had already violated Defendant's attendance policy and was terminated as a result. Thus, these facts have no bearing on Defendant's compliance with the FMLA or the lawfulness of the termination. *See Gutierrez v. 78th Jud. Dist. Ct.*, No. 1:07-cv-1268, 2009 WL 1507415, at *12 (W.D. Mich. May 29, 2009).

[3] The *Milman* court held that requesting FMLA leave is protected even if Plaintiff is ultimately ineligible for that leave. 58 F.4th at 871. But, because this case questions whether Plaintiff was entitled to the leave that she already took, that specific holding does not apply. *Id.* at 868.

connection between the protected FMLA activity and the adverse employment action.'" *Jaszczyszyn v. Advantage Health Physician Network*, 504 F. App'x 440, 447 (6th Cir. 2012) (quoting *Killian*, 454 F.3d at 556) (further citation omitted).

In her opposition memorandum, Plaintiff fails to meaningfully respond to Defendant's argument, merely instructing this court to "see Plaintiff's contentions in the previous paragraph." (Doc. No. 23 at 10). I assume the suggestion that I consider the "paragraph" above is a scrivener's error, and Plaintiff intends that I consider all her arguments in opposition to summary judgment on her interference claim.

In any event, for reasons laid forth above, a reasonable jury could not conclude Plaintiff was entitled to FMLA leave. Thus, her retaliation claim fails as a matter of law and Defendant is entitled to summary judgment on Count I – violation of the FMLA. *See, e.g., Morris v. Family Dollar Stores of Ohio, Inc.*, 320 F. App'x 330, 337-38 (6th Cir. 2009) (concluding that because plaintiff was not entitled to the leave he took, he was not engaged in a protected activity); *Anderson v. Kellogg USA, Inc.*, 674 F. App'x. 496, 501 (6th Cir. 2017) (affirming entry of summary judgment in favor of defendant on FMLA retaliation claim where plaintiff failed to establish that he was entitled to FMLA leave); *Hyde v. NSM Ins. Grp.*, No. 5:24-cv-120, 2025 WL 785857, at *10 (N.D. Ohio Mar. 12, 2025) (recognizing that when employee has taken leave, "entitlement to [that] leave is a prerequisite showing he engaged in a protected activity").

### B. AGE DISCRIMINATION[4]

The ADEA prohibits an employer from discriminating against an employee "because of such individual's age." 29 U.S.C. § 623(a)(1). Plaintiff alleges that Defendant terminated her

---

[4] Ohio courts routinely look to federal case law interpreting the ADEA when evaluating age discrimination claims under § 4112.02. Thus, my analysis under the federal statues applies equally to Plaintiff's state-law claims. *Amstutz v. Liberty Ctr. Bd.* of *Educ.*, 127 F. Supp. 3d 846, 854 (N.D. Ohio 2015).

because of her age in violation of the ADEA and Ohio Revised Code § 4112.02. (Doc. No. 1 at 6-7). Because Plaintiff relies on circumstantial rather than direct evidence of age discrimination, I analyze her claims under the *McDonnell Douglas* burden-shifting framework. *See Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992).

Under that framework, Plaintiff first must establish a prima facie case of age discrimination. *Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 252-53 (1981). If she does so, the burden shifts to Defendant "'to articulate some legitimate, nondiscriminatory reason'" for the adverse employment actions. *Id.* at 253 (quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). If Defendant successfully does so, the burden shifts back to Plaintiff to "prove by a preponderance of the evidence that the legitimate reasons offered by [Defendant] were not its true reasons, but were a pretext for discrimination." *Burdine*, 450 U.S. at 253 (citation omitted).

To establish a prima facie case under the ADEA, Plaintiff must show: (1) she was over the age of 40; (2) she suffered an adverse employment action; (3) she was qualified for her position; and (3) she was replaced by or treated differently than a similarly situated individual outside the protected class. *Geiger v. Tower Auto.,* 579 F.3d 614, 622 (6th Cir. 2009) (citations omitted).

Defendant argues that Plaintiff cannot establish the fourth element because the record does not show that she was replaced by, or treated less favorably than, a similarly situated substantially younger employee. (Doc. No. 16-1 a 21). Defendant also argues that, even if Plaintiff could establish a prima facie case, it had a legitimate, nondiscriminatory reason for terminating her employment. (*Id.* at 22).

Even if I assume Plaintiff could establish the other elements of her prima facie case, the record does not contain evidence from which a reasonable jury could find that she was replaced by, or treated less favorably than, a similarly situated younger employee.

A similarly situated comparator must be "similar to her proposed comparator in 'all relevant respects.'" *Miles v. S. Cent. Hum. Res. Agency, Inc.*, 946 F.3d 883, 893 (6th Cir. 2020) (quoting *Bobo v. United Parcel Servs., Inc.*, 665 F.3d 741, 751 (6th Cir. 2012)) (abrogated on other grounds by *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013)). While plaintiffs need not show an exact match, a proposed comparator typically, "'must have dealt with the same supervisor, have been subject to the same standards[,] and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" *Miles*, 946 F.3d at 893 (quoting *Mitchell*, 964 F.2d at 583).

Plaintiff has not identified such a comparator. She testified that she believed other employees failed to timely submit FMLA certification, but she could not identify those employees. (Doc. No. 21 at 33). Nor did she provide evidence concerning their ages, the circumstances surrounding their certification requests, the duration or status of their absences, or whether Defendant treated their absences as unexcused. Plaintiff also testified that another supervisor told her that other employees had experienced difficulties with Mutual of Omaha's portal. (*Id.*). But evidence that other employees experience technical problems is not evidence that those employees failed to timely submit medical certification and accumulated unexcused absences but nevertheless were treated more favorably than Plaintiff.

Further, nothing in the record indicates Plaintiff was "replaced" by a substantially younger employee. Plaintiff was Defendant's only Junior Quality Engineer. After Defendant terminated her employment, it did not hire another employee to fill that position. (Doc. No. 16-2 at 1). Instead, the record contains evidence showing Defendant outsourced or reassigned Plaintiff's duties to other employees. (*Id.*). But the redistribution of duties among existing employees does not constitute "replacement" for the purposes of establishing a prima facie discrimination claim. *See Grosjean v. First Energy Corp.*, 349 F.3d 332, 336 (6th Cir. 2003) ("A 'person is not replaced when another

employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work. A person is replaced only when another employee is hired or reassigned to [perform the plaintiff's duties.'") (quoting *Barnes v. GenCorp Inc.*, 896 F.2d 1457, 1465 (6th Cir. 1990)) (further citation omitted). On this record, no reasonable jury could find that Plaintiff was replaced by a substantially younger, similarly situated employee.

I conclude there is no genuine issue of material fact as to the fourth element of Plaintiff's prima facie case of age discrimination. Thus, I grant Defendant's motion for summary judgment on Counts II and III – violation of the ADEA and Ohio age discrimination law.

### C. RACE AND NATIONAL ORIGIN DISCRIMINATION[5]

Title VII of the Civil Rights Act of 1964 makes in an "unlawful employment practice to "discriminate against any individual with respect to [their] compensation, terms, conditions, or privileges of employment because of such individual's race . . . or national origin." 42 U.S.C. § 2000e-2(a)(1). Like ADEA claims, Title VII claims based on circumstantial evidence "are analyzed under an the familiar three-step framework articulated in *McDonnell Douglas* . . .." *Briggs v. Univ. of Cincinnati*, 11 F.4th 498, 508 (6th Cir. 2021).

To establish a prima facie case for race or national origin discrimination, Plaintiff must show (1) she is a member of a protected class; (2) she suffered an adverse employment action; (3) she was qualified for the position; and (4) she was replaced by someone outside of her protected class or was treated differently than similarly situated individuals outside the protected class. *Id.*

---

[5] Ohio courts generally apply Title VII case law when analyzing claims of national origin discrimination. *See Norbuta v. Loctite Corp.*, 1 F. App'x. 305, 311 (6th Cir. 2001) (citing *Genaro v. Cent. Transp., Inc.,* 703 N.E. 2d 782, 786 (Ohio 1999)) (further citations omitted). Thus, my analysis of Plaintiffs Title VII national origin claim will apply equally to the claim brought under § 4112.02.

Plaintiff argues that the record shows a "pattern of discriminatory actions" to support her Title VII claims. (Doc. No. 11 at 13). She points to several employment decisions involving other employees. Plaintiff asserts that Stacy Powers – a younger non-Hispanic employee – was promoted over Plaintiff "but did not know how to do her job." (*Id.*). Plaintiff also identifies younger non-Hispanic male employees – Conner Mayo and Dillon McDiarmid – who she alleges were hired at a higher rate of pay and given company cell phones, despite being unqualified for their positions. (*Id.*). Lastly, Plaintiff testified that she "believed" Caucasian employees who failed to turn in FMLA certification were not terminated. (*Id.*).

Again, Plaintiff has failed to establish the fourth element of her claim. She has not shown that Powers, Mayo, or McDiarmid engaged in conduct materially comparable to the conduct prompting Plaintiff's termination. There is no evidence that any of those employees failed to timely provide required FMLA certification, accumulated unexcused absences, and yet were not terminated. Further, the record does not identify the employees Plaintiff believes failed to provide FMLA certification, their race or national origin, or the circumstances surrounding their leave requests and absences.

Moreover, the other employment decisions Plaintiff identifies do not permit a reasonable inference that Defendant terminated her because of her race or national origin. Plaintiff's assertions concering promotions, compensation, company cell phones, and the qualifications of other employees involve different employment decisions. Further, there are no facts in the record connecting those decisions to race or national origin or to the decision to terminate Plaintiff.

Plaintiff has failed to produce evidence from which a reasonable jury could find that she was replaced by a similarly situated employee outside her protected class who was treated more favorably. Thus, I grant Defendant's motion for summary judgment on Plaintiff's claims for race and national origin discrimination under Title VII and Ohio law.

## V. CONCLUSION

For the reasons stated above, I grant Defendant ABC INOAC Exterior Systems, LLC's motion for summary judgment, (Doc. No. 16), on Plaintiff's claims for violation of the FMLA (Count I), violation of the ADEA (Count II), age discrimination under Ohio Revised Code § 4112.02 (Count III), Title VII race discrimination (Count IV), racial discrimination under Ohio Revised Code § 4112.02 (Count V), Title VII national origin discrimination (Count VI), and national origin discrimination under Ohio Revised Code § 41102.02 (Count VII). Plaintiff's complaint is dismissed with prejudice. (Doc. No. 1).

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge